UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HARLYS DANIEL ROSARIO CANTILLO,<br><br>                    Petitioner,<br><br>     v.<br><br>WARDEN NORTHWEST DETENTION CENTER et al.,<br><br>                    Respondents. | CASE NO. 2:26-cv-00575-DGE<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner Harlys Rosario Cantillo's petition for writ of habeas corpus.  (Dkt. No. 1.)  For the reasons discussed below, the Court DENIES the petition.

**I     BACKGROUND**

**A.  Background Fact**s

Petitioner, a native and citizen of Columbia, entered the United States on October 25, 2023 without inspection or parole.  (Dkt. No. 17 at 2.)  On October 26, 2023, Border Patrol agents apprehended Petitioner and transported him to a processing center in Texas.  (Dkt. No. 16-3 at 3.)  Petitioner was issued a Notice and Order of Expedited Removal pursuant to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

Immigration and Nationality Act ("INA") § 235(b)(1), codified at 8 U.S.C. § 1225(b)(1).  (Dkt. Nos. 1-1 at 5; 17 at 2; 16-2 at 2.)  The Order of Expedited Removal determined Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1]  (Dkt. No. 16-2 at 2.)  On November 28, 2023, Petitioner was released on "interim parole" pursuant to 8 U.S.C. § 1182(d)(5)(A).  (Dkt. Nos. 17 at 2; 16-4 at 2.)  Petitioner's parole authorization was valid for one year and "automatically terminate[d] . . . at the end of the one-year period" unless extended by Immigration and Customs Enforcement ("ICE") "at its discretion."  (Dkt. No. 16-4 at 2.)  On September 16, 2024, Petitioner filed an application for asylum and withholding of removal with the United States Citizenship and Immigration Services ("USCIS").  (Dkt. Nos. 1-1 at 6; 17 at 2.)

On January 2, 2026, Petitioner was arrested in Utah for "disorderly conduct, domestic violence in the presence of a child – strangulation/choking, three counts of assault, and property damage."  (Dkt. No. 17 at 3.)  Because Petitioner's arrest and criminal charges subjected him to the Laken Riley Act,[2] the following day, ICE "lodged a detainer" on Petitioner with the Salt Lake City County Jail.  (*Id.*; Dkt. Nos. 16-6 at 2; 14 at 4.)  On January 26, 2026, Petitioner pleaded guilty to disorderly conduct, and all other charges were dismissed with prejudice.[3]  (Dkt. Nos. 1-1 at 1–2; 17 at 3.)  On January 28, 2026, the Department of Homeland Security ("DHS") issued a "Warrant for Arrest of Alien," arrested Petitioner, and transferred him to the local processing center.  (Dkt. Nos. 16-5 at 2; 17 at 3.)  Petitioner was served with a Notice to Appear,

---

[1] The order identifies INA § 212(a)(7)(A)(i)(I), which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[2] Pursuant to the Laken Riley Act, subsection (c) of 8 U.S.C. § 1226 was amended to mandate detention for specific categories of noncitizens who have been charged with certain crimes, including "any crime that results in death or serious bodily injury to another person."  *See* 8 U.S.C. § 1226(c)(1)(E); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (Laken Riley Act).

[3] As Respondents concede, the Laken Riley Act ceased to require Petitioner's mandatory detention once these criminal charges were dismissed with prejudice.  (Dkt. No. 14 at 6–7.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

which stated Petitioner was a noncitizen "present in the United States who has not been admitted or paroled," and charging Petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)(I) and (a)(7)(A)(i)(I).[4]  (Dkt. Nos. 16-1 at 2; 17 at 3.)

On February 3, 2026, an immigration judge at the Salt Lake City Immigration Court denied Petitioner's request for bond, citing *Matter of Yajure-Hurtado*, 29 I&N 216 (BIA 2025).[5]  (Dkt. No. 16-9 at 2.)  Petitioner requested reconsideration of the bond decision, and the immigration judge again denied release.  (Dkt. No. 1 at 2.)  Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on February 12, 2026.  (Dkt. No. 17 at 4.)  At a master hearing on February 27, 2026, Petitioner admitted to the allegations and conceded removability.  (*Id.*)  On March 11, 2026, Petitioner re-filed his application for asylum and withholding of removal with the immigration court.  (*Id.*)  On March 26, 2026, Petitioner had a merits hearing.  (*Id.*)

### B.  Procedural Facts

On February 17, 2026, Petitioner's wife filed a petition for writ of habeas corpus on his behalf.  (Dkt. No. 1.)  She subsequently moved for leave to proceed as "next friend" on behalf of Petitioner.  (Dkt. No. 5.)  On February 27, 2026, the Court ordered that within 45 days, Petitioner was required to either (1) notify the Court in writing that he would appear on his own behalf to prosecute this action or (2) have his wife secure licensed counsel.  (Dkt. No. 6.)  On March 9, 2026, Petitioner filed a declaration authorizing his wife to file a habeas petition on his behalf and

---

[4] The Notice to Appear vacated Petitioner's expedited removal order pursuant to 8 C.F.R. § 208.30.  (Dkt. No. 16-1 at 2.)

[5] In *Matter of Yajure Hurtado*, the immigration judge "held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii)."  29 I&N Dec. at 229.

acknowledging he would represent himself moving forward unless counsel was appointed.  (Dkt. No. 7.)  Therefore, the Court entered its general scheduling order, which required Respondents to submit a return by March 23, 2026, and Petitioner to submit a traverse by March 30, 2026.  (Dkt. No. 10.)  The Parties timely filed their briefing.  (*See* Dkt. Nos. 14, 18.)

## II      LEGAL STANDARD

### A.  Habeas Petitions

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B.  Parole

It is undisputed that Petitioner is an applicant for admission who is subject to mandatory detention pursuant to § 1225(b), and DHS paroled Petitioner into the United States in November 2023.  (Dkt. Nos. 17 at 2; 16-4 at 2; 18 at 3.)

8 U.S.C. § 1182 provides that the Secretary of Homeland Security may, in their discretion, parole a noncitizen into the United States under such conditions as they may prescribe "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8

U.S.C. § 1182(d)(5)(A).  "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]"  *Id.*

Parole may be terminated either automatically or with notice.  *See* 8 C.F.R. § 212.5(e). Parole is *automatically* terminated without written notice "at the expiration of the time for which parole was authorized" and the noncitizen "shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."  8 C.F.R. § 212.5(e)(1)(ii). Paragraph (e)(2) states in part that the noncitizen "shall be restored to the status that he or she had at the time of parole."  *Id.* § 212.5(e)(2)(i).  To *revoke* parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen.  *Id.* (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen).

### III   ANALYSIS

Petitioner asserts three claims: (1) Respondents re-detained Petitioner in violation of the Due Process Clause of the Fifth Amendment, (2) Petitioner was not granted a constitutionally adequate bond hearing because the immigration judge failed to properly weigh evidence, and (3) his detention has become punitive.[6]  (Dkt. No. 1 at 3–4.)

---

[6] In a reply filed on March 26, Petitioner makes an additional argument: that DHS acted arbitrarily and capriciously in re-detaining him.  (Dkt. No. 18 at 3.)  The Court does not entertain

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 5

**A.  Petitioner's Detention is Statutorily Mandated**

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and placed in expedited removal proceedings.  (Dkt. No. 16-2 at 2.)  His initial detention was accordingly governed by 8 U.S.C. § 1225(b)(1).  Petitioner was later released on parole pursuant to 8 U.S.C. § 1182(d)(5).  (Dkt. Nos. 17 at 2; 16-4 at 2.)  Those detained under § 1225(b)(1) may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3.  "Such parole, however, 'shall not be regarded as an admission of the [non-citizen].'  8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, 'the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'"  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); *see also Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 259 (BIA 2010) ("After the purpose of the parole has been served, the [non-citizen] returns to

---

this new argument; "[i]t is well-settled. . . that a habeas petitioner cannot amend his petition—much less introduce wholly new claims—in his reply brief."  *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Calderon v. Noem*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025).  The proper place for such claims is in a new petition for relief.  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

custody, and his or her case is dealt with in the same manner as any other applicant for admission.").  As Respondents note, "nothing in the record suggests that Petitioner ever requested or was granted an extension of his parole." (Dkt. No. 14 at 6.)  Petitioner offers no basis to conclude he is not subject to § 1225(b)(1); in fact, Petitioner states, he "is detained under INA § 235(b)." (Dkt. No. 18 at 3.)  It thus appears that Petitioner's detention reverted to § 1225(b)(1) upon his re-arrest in January 2026.

Because Petitioner is subject to mandatory detention pursuant to § 1225(b), his current detention does not violate the Due Process Clause.

**B.  Petitioner is Not Entitled to a Bond Hearing**

Petitioner argues he received a constitutionally inadequate bond hearing because the immigration judge failed to properly weigh certain evidence.  (Dkt. No. 1 at 3–4.)  However, the immigration judge correctly concluded it did not have jurisdiction to grant a bond because Petitioner was subject to mandatory detention.  (*See* Dkt. No. 16-9 at 2.)  Thus, the immigration judge did not "fail to properly weigh" evidence.  (Dkt. No. 1 at 3.)

Even if the statutory terms of § 1225(b) do not require a bond hearing, Petitioner's continued detention must still comport with due process.  In *Jennings*, the Supreme Court held that § 1225(b)—under which Petitioner is detained—"unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1115 (W.D. Wash. 2019) (citing *Jennings*, 583 U.S. at 297, 303).  While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 7

precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. However, "'[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Maliwat v. Scott*, No. C25-00788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the *Banda* court declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–1107.  Rather, the court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–859 (D. Minn. 2019)). Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process.  *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *6 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

3170929 (W.D. Wash. Nov. 13, 2025); *Hong v. Mayorkas*, No. 20-cv-01784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).  Respondents acknowledge that courts in this district analyze this issue using the *Banda* multi-factor test (*see* Dkt. No. 14 at 8), and the Court will likewise apply the *Banda* test in determining if Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

The first and "most important factor" under the *Banda* test is the length of detention.  385 F. Supp. 3d at 1118.  At the time of this order, Petitioner has been detained for over two months.  Thus, his civil detention has not reached the length of what many courts in this district have found to be unreasonable.  *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1118–1119 (finding that petitioner's length of detention "strongly favors" a bond hearing because "Petitioner has been in detention for approximately 17 months, which is a very long time."); *Cardozo v. Bostock*, No. C25-00871-TMC, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding petitioner's 12-to-13-month detention favored granting a bond hearing); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) ("almost 12 months"); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, No. C23-1592-RSL-MLP, 2024 WL 1676681 (Apr. 18, 2024) (11 months).  The first *Banda* factor weighs against granting a bond hearing.

The second *Banda* factor for the Court to consider is the likely duration of future detention.  385 F. Supp. 3d at 1118.  Respondents contend any estimate would be speculative because the immigration court has exclusive jurisdiction over Petitioner's pending application

for asylum, and it is unknown whether either party would seek to appeal any decision to the Board of Immigration Appeals. (Dkt. No. 14 at 9.) The Court agrees with Respondents that any estimate would be speculative. Thus, this factor is neutral.

The third *Banda* factor is the conditions of detention. 385 F. Supp. 3d at 1118. Petitioner does not assert what the conditions at the NWIPC are like. Thus, the third *Banda* factor is neutral.

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the petitioner. 385 F. Supp. 3d at 1118. This factor is neutral because Petitioner has not caused any delays in the case. Similarly, the fifth *Banda* factor—delays in the removal proceedings caused by the respondents, *see id.*—is neutral because there is no evidence of governmental delay.

Under the final *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. 385 F. Supp. 3d at 1118. Because the outcome of Petitioner's asylum application is unknown, it would be speculative to evaluate this factor. Thus, the sixth *Banda* factor is neutral.

In sum, five of the six *Banda* factors are neutral, and one weighs against granting a bond hearing. Therefore, the Court concludes Petitioner's detention has not become unreasonable, and he is not entitled to a bond hearing.

**C. Petitioner Has Not Shown His Detention is Punitive**

Petitioner argues his ongoing detention has become a "form of punishment" because he is separated him for his newborn child and family without lawful justification. (Dkt. No. 1 at 4.) At a "bare minimum," noncitizens subject to civil immigration detention—just like people detained under civil process or accused but not convicted of a crime—"cannot be subjected to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

conditions that 'amount to punishment.'" *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Conditions of confinement amount to punishment if they are "expressly intended to punish," "excessive in relation to their non-punitive purpose," or "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, 393 F.3d at 932 (internal quotation marks and citations omitted).

Here, Petitioner does not contend his detention is expressly intended to punish him, excessive, or that there are alternative methods to achieve the objective.  Thus, Petitioner fails to show that his detention amounts to punishment.

**IV    CONCLUSION**

Accordingly, the Court DENIES Petitioner's petition for writ of habeas corpus.  (Dkt. No. 1.)  The Clerk is directed to close the matter and enter judgment.

Dated this 1st day of April, 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11